**William DELLA VALLE d/b/a Potters Avenue Supermarket, Plaintiff,**

v.

**UNITED STATES of America, DEPARTMENT OF AGRICULTURE, et al., Defendants.**

**C.A. No. 85–0527–S.**

United States District Court, D. Rhode Island.

Oct. 9, 1985.

As Amended Oct. 28, 1985.

---

Donald R. Lembo, No. Providence, R.I., for plaintiff.

Michael P. Iannotti, Asst. U.S. Atty., Providence, R.I., for defendants.

*Memorandum and Order*

SELYA, District Judge.

This case presents, in its early stages, an important question as to the meaning and intendment of a federal statute, 7 U.S.C.

§ 2023. Resolution of this question in turn impacts upon the manner in which the United States Department of Agriculture may enforce sanctions against retail food vendors under the federal Food Stamp Act (Act), 7 U.S.C.A. §§ 2011–2029 (West Supp. 1985).

## I. TRAVEL OF THE CASE

Effective April 17, 1985, the Potters Avenue Supermarket (Market), a retail food store, was suspended by the Rhode Island Health Department from participation in the special supplemental food program for women, infants, and children (WIC).[1] The Market chose not to appeal this suspension. By letter dated May 2, 1985, the Food and Nutrition Service (FNS) of the United States Department of Agriculture notified the Market that its authorization to participate in the food stamp program was being withdrawn in consequence of its WIC suspension. *See* 7 C.F.R. §§ 278.1(b)(3)(ii), 278.2(k). The Market pursued an administrative appeal, but to no avail; on July 9, 1985, the Secretary of Agriculture (Secretary), acting through an administrative review officer, confirmed the Market's exile from the food stamp program. The period of disqualification (three years) was timed to coincide with the duration of the Market's earlier suspension as a WIC vendor.

William Della Valle, the owner and sole proprietor of the Market, seasonally prosecuted an action against the United States Department of Agriculture in the Rhode Island superior court seeking judicial review of the final FNS order. Under 7 U.S.C. § 2023(a), state and federal courts have concurrent jurisdiction anent judicial review of food stamp program disqualifications. His verified complaint was filed in that court on August 9, 1985.[2] On the same date, the plaintiff obtained an ex

---

1. WIC is a federal program designed primarily to furnish supplemental foodstuffs and nutrition education to pregnant, postpartum, and breastfeeding women and to infants and young children. 7 C.F.R. § 246.1 (1985). The administration and enforcement of the WIC program has been entrusted, in the main, to the states. 7 C.F.R. § 246.10(g). In Rhode Island, this responsibility has devolved upon the state health department. The state inspectors determined,

as a basis for the suspension, that the Market was guilty of eleven separate violations of the regulations, including altering of WIC program vouchers and permitting such vouchers to be used for the acquisition of prohibited items.

2. Della Valle named the state health department as a codefendant. Inasmuch as the state agency, from aught that appears of record here, has neither been served nor appeared, this court

parte restraining order from a judge of the state superior court permitting the Market's continuing participation in the food stamp program pendente lite. On August 16, 1985, before the scheduled state court hearing on preliminary injunction could be held, the government removed Della Valle's action to this court. 28 U.S.C. § 1446 (1982).

The plaintiff, little daunted, promptly moved for a stay of the final administrative decision. 7 U.S.C. § 2023(a). A hearing was held on August 28, 1985. In view of the delicately-balanced legal questions which surfaced at that time, *see* text *post*, this court granted a stay of limited duration,[3] on condition that the Market, during the currency of the stay, meticulously observe and abide by the pertinent regulations of the food stamp program. A briefing schedule was set in place, and each party has now made its submissions. This rescript comprises the court's findings and conclusions with regard to the issues sub judice.

## II. ISSUES PRESENTED

The statute which is at play here, 7 U.S.C. § 2023, permits judicial review of FNS decisions of this ilk. It intones in material part that

> During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless an [sic] application to the court . . ., and after hearing thereon and *a showing of irreparable injury*, the court temporarily stays such administrative action pending disposition of such trial or appeal.

7 U.S.C. § 2023(a) (emphasis supplied).

The plaintiff reads this statutory language quite literally: he contends that, if "irrepa-

rable injury" is demonstrated, no further showing must be made to justify issuance of the stay. The government scans the statute from a broader vista. It urges that the traditional quadrat of factors which are applicable to other requests for preliminary injunctive relief, Fed.R.Civ.P. 65(a), must all be surveyed and that, for a § 2023 stay to issue, a showing tantamount to one which would be required under Rule 65 must eventuate. That traditional four-part analysis includes, over and above any irretrievable damage to the movant, consideration of (i) the plaintiff's likelihood of success on the merits, (ii) the harm which the restraint will work on the defendant, and (iii) the public interest. *See, e.g., Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981); *Calenda v. Rhode Island Board of Medical Review,* 565 F.Supp. 816, 818 (D.R.I. 1983). Cases precisely in point are in short supply and are divided on the question. *Compare Factor v. United States,* 556 F.Supp. 567 (D.Mass.1983) (stay may be granted upon a showing of irreparable harm alone) *with Gurtzweiler v. United States,* 601 F.Supp. 883 (N.D.Ohio 1985) (stay may not be issued without a finding of probability of success on the merits) and *Pepsi Cola Bottling Co. of Puerto Rico v. United States,* 500 F.Supp. 304 (D.P.R. 1980) (same).[4]

As a subsidiary question, the parties also contest the character of the "irreparable injury" which is necessary to uncap the unguent of § 2023(a). The Market claims that substantial prospective loss of customers (and consequently, the threatened devastation of its business) is enough; the government asseverates that, at a mini-

---

merely takes note of the attempted joinder. It is, for present purposes, beside the point.

**3.** Originally, the interim stay was to expire on September 30, 1985. The grace period has since been extended, with the acquiescence of the parties, to coincide with the date of this decision.

**4.** Although Judge Torruella's comments in *Pepsi Cola Bottling Co. of Puerto Rico,* 500 F.Supp. at

305–06, squarely support the government's view of the quantum of proof required to secure a judicial stay, those remarks appear to be obiter dicta. The plaintiff in that case did not deny the existence of the state of facts upon which the disqualification order was bottomed, *id.* at 506, and its complaint therefore "failed to state a cause of action." *Id.*

mum, the perceived detriment must be more broadly focussed.

The court will deal with these issues seriatim.

## III. SUFFICIENCY OF IRREPARABLE INJURY ALONE

Unlike Fed.R.Civ.P. 65(a), where the rule itself is silent as to the criteria upon which a preliminary injunction is to be founded, and caselaw has formulated the traditional four-part test,[5] § 2023(d) on its face seems to embody a flat legislative directive that the presence or absence of "irreparable injury" should control abatement (or not) of the administrative order pending judicial scrutiny of the merits of the appeal. And, the implementing regulation, 7 C.F.R. § 279.10(d), conduces to the same view. (Section 2013(c) of the Act authorizes the Secretary to "issue such regulations consistent [therewith] as the Secretary deems necessary or appropriate....") The regulation reads:

> Pending the judicial review, or any appeal from the judicial review, the administrative action under review shall remain in force, unless the firm makes application to the court and, *after a hearing on the action showing irreparable injury,* the court temporarily stays the administrative action under review pending disposition of the de novo trial or an appeal from the trial.

7 C.F.R. § 279.10(d) (emphasis supplied). ▪ Although the regulation is not controlling, it sheds further light on the statutory scheme. *E.g., Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980); *Citizens Savings Bank v. Bell,* 605 F.Supp. 1033, 1041–42 (D.R.I.1985). The fact that the Secretary, in formal rulemaking, has

focussed exclusively on the need for a movant to "show[ ] irreparable injury," 7 C.F.R. § 279.10(d), clearly implies that his understanding of § 2023 was of a piece with the premise which Della Valle exhorts this court to adopt. *Accord Factor,* 556 F.Supp. at 568–69. A similar implication can be read into the omission from the regulation of any reference to a showing of likelihood of success. *Cf. Bank of New York v. Hoyt,* 617 F.Supp. 1304, 1314 n. 9 (D.R.I. 1985) (construing 12 C.F.R. § 590.2(f)). The true measure of the deference due to the language of 7 C.F.R. § 279.10(d) depends upon how persuasive the interpretation appears to be in light of all the attendant circumstances. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *Citizens Savings Bank,* 605 F.Supp. at 1042. Where, as here, the regulation tracks in precisely the same direction as the language of the governing statute itself and is consistent with the most natural reading thereof, the measure of such deference is great.[6]

▪ Furthermore, the Market's interpretation of 7 U.S.C. § 2023 is superior to the government's on other grounds as well. Section 2023 contains plain and seemingly unambiguous language. The canons of statutory construction dictate, therefore, that a court apply such an ordinance without embroidery, according to its explicit terms. *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *Ciampa v. Secretary of Health and Human Services,* 687 F.2d 518, 524 (1st Cir.1982); *Bank of New York,* 617 F.Supp. at 1309. "Given the absence of the slightest hint of any legislative intention to the contrary, the sweep of the enactment

---

5. Rule 65(b), which speaks to temporary restraining orders, does specify that such an anodyne may be had without notice to the adverse party if "irreparable injury, loss, or damage" will otherwise result. But, as Judge Keeton pointed out, such transient relief is not fairly analogous to a § 2023 stay. *See Factor,* 556 F.Supp. at 569 n. 3.

6. The First Circuit has acknowledged that regulations promulgated under the food stamp program can have *convincing force in deciphering the congressional will. See Broad Street Food Market, Inc. v. United States,* 720 F.2d 217, 221 (1st Cir.1983) (utilizing 7 C.F.R. § 278.6(f) to illumine 7 U.S.C. § 2021 as to the extent of the Secretary's discretion vis-a-vis choice of sanction).

should be allowed to operate unfettered by judicial editing." *Id. See also American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *Lane v. United States,* 727 F.2d 18, 20 (1st Cir.1984).

■■■ A second, equally important, canon of construction likewise favors the plaintiff's literalistic reading of § 2023. In divining the legislative will, no clause or verbiage of a statute should be construed as meaningless or as surplusage, if a construction can legitimately be deduced which will preserve, and give effect to, all of the words of the Act. *Blue Cross of Rhode Island v. Cannon,* 589 F.Supp. 1483, 1491 (D.R.I.1984). It is settled beyond peradventure that the court's generic power to grant a stay, apart from any statute, is to be exercised in the ambience of several elements, including "[w]hether or not denial of the stay will cause irreparable harm to the movant." *Chang v. University of Rhode Island,* 107 F.R.D. 343, 344, (D.R.I. 1985). *See also Morgan v. Kerrigan,* 509 F.2d 618, 619 (1st Cir.1975); *Adams v. Walker,* 488 F.2d 1064, 1065 (7th Cir.1973); *Beverly v. United States,* 468 F.2d 732, 740–41 n. 13 (5th Cir.1972); *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir.1970). But, more than the prospect of irremediable harm is necessary to trigger a garden variety judicial stay: factors reminiscent of those which grace the preliminary injunction standard, *see* text *ante* at Part II, must routinely be considered. *E.g., Adams,* 488 F.2d at 1065; *Beverly,* 468 F.2d at 740–41 n. 13; *Chang,* 107 F.R.D. at 344 slip op. at 3. Thus, if Congress intended that the traditional elements for the issuance of a stay should be considered in their ensemble by a reviewing court when a motion was filed pursuant to 7 U.S.C. § 2023, the statutory reference to "a showing of irreparable injury" was pleonastic at best; unembellished allusion to the availability of a stay would have directed inquiry to precisely the four-part test now hawked by the United States. The only way in which that phrase can be invigorated is if it is viewed, as the Market con-

tends, as setting a special benchmark for the appropriateness vel non of a food stamp program stay. On the defendant's interpretation of the legislation, those five words would be aimless surplusage. Thus, to give effect to the "irreparable injury" reference in § 2023, the construction of the statute urged by the government must be rejected.

This conclusion is bolstered by a review of the Act as a whole. The Congress plainly knew how to bring the standards of injunctive redress into play. *See, e.g.,* 7 U.S.C. § 2020(g) (courts authorized to afford "appropriate injunctive relief" to correct noncompliance by participating state agencies). The custom-tailored stay mechanism limned in § 2023(a) and pinpointed in 7 C.F.R. § 279.10(d) stands in stark contrast to the direct references to injunctive relief; the government's effort to treat these diverse choices of language as differences shorn of any distinction seems to this court to be the merest of vellieties.

Lastly, the interpretation of § 2023(a)'s stay provision urged by the plaintiff comports with the overall congressional intent. The Food Stamp Act not only renders disqualification orders subject to judicial review, *see* 7 U.S.C. § 2021(c), but also mandates "a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." *Id.* § 2023(a). As Judge Keeton has noted:

> The interpretation of the statute [limiting the stay inquiry to the presence or absence of irreparable injury] is consistent with its apparent purpose of providing for a genuine opportunity for de novo hearing in the district court. The stay, in effect, is designed to protect the statutory right to such a hearing.

*Factor,* 556 F.Supp. at 569.

■■ This court recognizes that Judge Walinski's decision in *Gurtzweiler v. United States,* 601 F.Supp. 883 (N.D. Ohio 1985), stands squarely for an opposing view. Yet, with respect, *Gurtzweiler* is unconvincing. The court's reliance on the statutory directive "that an administrative

action 'shall remain in full force and effect' until a showing is made for the need of a stay," *id.* at 884, quoting 7 U.S.C. § 2023, is tautological; it wholly fails to address the pivotal question: what must a grocer demonstrate to merit a stay? And, the authorities cited in *Gurtzweiler* do not bear the weight assigned to them. *Hamlin Testing Laboratories, Inc. v. United States Atomic Energy Commission,* 337 F.2d 221, 222 (6th Cir.1964), relied on by the *Gurtzweiler* court, involves rules applicable to a traditional stay, and does not speak to the intendment of the specially-crafted language of 7 U.S.C. § 2023 and its accompanying regulations.[7] The second authority upon which *Gurtzweiler* relies, *Sitto v. United States,* No. 82–8029 (6th Cir. June 1, 1982) (unpublished order), is closer to the point. The *Sitto* court[8] refused to reverse a district court's denial of a stay under 7 U.S.C. § 2023. The Sixth Circuit did not discuss the presence or absence of irreparable harm, the unusual phraseology of 7 U.S.C. § 2023, or the language of 7 C.F.R. § 279.10(d). Although the court of appeals plainly believed that the movant had an obligation "to demonstrate that he is likely to prevail on the merits in the district court's *de novo* review," *Sitto,* Order at 2, the etiology of that conclusion is obscure. This court, unlike the *Gurtzweiler* court, is not bound to follow *Sitto,* and declines to do so.

Disqualification from the food stamp program is a substantial sanction. Congress, had it chosen to do so, might have made an administrative decision of this sort essentially unreviewable. *See* 5 U.S.C. § 701(a). *See generally Abbott Laboratories v. Gardner,* 387 U.S. 136, 137, 139–41, 87 S.Ct. 1507, 1509, 1510–12, 18 L.Ed.2d 681 (1967). It elected, instead, to provide judicial review of such determinations and not to limit such oversight to the confines of the administrative record. By granting a trial de novo to an aggrieved grocer—a trial "at which the parties may introduce new evidence concerning the violations," *Broad Street Food Market, Inc.,* 720 F.2d at 220—Congress went to unusual lengths. And, it not only ceded to the district courts the power to hold the administrative order in abeyance pending the outcome of the trial de novo, but it singled out "a showing of irreparable injury," 7 U.S.C. § 2023(a), as the sine qua non for the issuance of such a detainer. Given the statutory mosaic as a whole, and the tenor of the Secretary's implementing regulation, 7 C.F.R. § 279.10(d), it would necessitate a quantum leap to assume that Congress expected the courts to read between the lines and to stack additional preconditions atop the particularized showing which the legislation and the regulation expressly require.

This court hesitates to adopt the vision of a fissilingual Congress which is inherent in the government's reading of 7 U.S.C. § 2023. A stay may be granted under the statute so long as the movant makes out "a showing of irreparable injury." *Id.* Any other conclusion would fly in the face of settled canons of construction and would rob the de novo trial (which Congress thought to be appropriate) of any real meaning.

## IV. DIMENSIONS OF THE IRREPARABLE INJURY

The government contends that, even if irreparable harm is the key requirement for postponing the effective date of the administrative order, such a detriment must amount to more than "mere proof of the loss of the business of food stamp customers." Defendant's Brief at 8. This argument, too, rests largely on the authority of *Gurtzweiler.* There, Judge Walinski

---

**7.** *Hamlin* involved an effort to stay an order of the Atomic Energy Commission denying a request for renewal of a license to perform industrial radiography. 337 F.2d at 221. Inasmuch as the applicable provision for judicial oversight, 42 U.S.C. § 2239(b), did not provide for a de novo trial, *Hamlin* is distinguishable for that reason as well. Certainly, the narrower the scope of available judicial review, the easier it becomes (as a general rule) to justify giving immediate effect to the final administrative order.

**8.** The order in *Sitto* issued over the signature of the clerk of court. It is unclear if more than one judge participated in its formulation.

noted that "[i]f a showing of economic loss was sufficient to invoke a stay under 7 U.S.C. § 2023, ... issuance of a stay would be automatic." 601 F.Supp. at 885.

■ The Act, however, does not support such a limited view of the dimensions of irreparable injury. To be sure, an endurable deprivation of modest revenues during the pendency of judicial review might not amount to irredeemable harm. Courts have, in analogous contexts, so found. *Cf. Sampson v. Murray*, 415 U.S. 61, 90–92, 94 S.Ct. 937, 952–54, 39 L.Ed.2d 166 (1974) (court overturned order requiring that federal employee be reinstated to her former employment because "temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury"); *Ekanem v. Health & Hospital Corporation of Marion County*, 589 F.2d 316, 321–22 (7th Cir.1979) (order granting reinstatement reversed because loss of pay and difficulty in finding other employment does not show irreparable injury). Thus, contrary to the bugbear postulated in *Gurtzweiler*, a stay will not be an "automatic" aftermath to every program disqualification.

■ The case at bar, far from depending upon run-of-the-mine economic loss, presents a compelling picture of the prospect of irreparable harm. The plaintiff has asserted in his verified complaint that "his store is located in a ... low income neighborhood" and that "between 90% to 95% of [the Market's] business emanates from food stamp households." The defendant does not dispute these allegations. In short, the results of the suspension are likely, in this instance, to be catastrophic; the Market may well be forced to close its doors. In such circumstances, the de novo judicial trial which 7 U.S.C. § 2023 assures to Della Valle will be reduced to the emptiest of promises unless the court defers the effective date of the administrative order.

The plaintiff has met his burden of showing a sufficient threat of irremediable damage so as to warrant the issuance of a stay.

## V. CONCLUSION

The court is mindful of the public interest which underlies vigilant monitoring and enforcement of the Food Stamp Act. Violators should be punished. But, there is no justification for a headlong rush to judgment in a manner which denies to participating vendors the rights of review secured to them by the Congress.

In fealty to the statute, the regulations, and the facts before this court, an interim stay of the final administrative order is granted. The effective date of the defendant's ruling disqualifying the Market from participation in the food stamp program for a period of three years is postponed *sine die* pending the judgment of this court on the merits of this action. If not sooner vacated, the stay shall expire upon the entry of any judgment in this court affirming the action of the Secretary.[9]

*It is so ordered.*

---

9. Each judge of this court has the power and authority to determine priorities on his trial calendar "consistent with the just, efficient performance of the business of the court." D.R.I. L.R. 9(a). To insure that administrative appeals of this sort are not used for purposes of delay, expedited consideration is appropriate. There-

fore, this case is advanced upon the court's docket, and will be called for trial on the December, 1985 calendar at the latest. A status/scheduling conference, Fed.R.Civ.P. 16, will be held in chambers on Tuesday, October 15, 1985 at 8:30 a.m. Counsel shall be governed accordingly.