**William DELLA VALLE d/b/a Potters Avenue Supermarket, Plaintiff,**

**v.**

**UNITED STATES of America, DEPARTMENT OF AGRICULTURE, Defendant.**

**Civ. A. No. 85–0527–S.**

United States District Court, D. Rhode Island.

Jan. 27, 1986.

---

Donald R. Lembo, North Providence, R.I., for plaintiff.

Michael P. Iannotti, Asst. U.S. Atty., Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This case, brought by a food retailer under 7 U.S.C. § 2023(a) to challenge a food stamp program disqualification order (FSPD Order) imposed by the Secretary of Agriculture (Secretary), was before this court on a preliminary matter at an earlier date. *See Della Valle v. United States,* 619 F.Supp. 1297 (D.R.I.1985) (*Della Valle I*). It is now pending the federal defendant's motion for *brevis* disposition on the merits.[1] The court entertained oral argument on January 22, 1986 and thereupon reserved decision.

### I.

An overview of the litigation is set out in *Della Valle I*, and the reader is referred to that opinion for background information. *E.g., id.* at 1299–1300. Thus, a decurtate summary will suffice at present. Effective

April 17, 1985, the Potters Avenue Supermarket (Market), a retail food store owned and operated by the plaintiff, William Della Valle, was suspended by RIDH from participation in the special supplemental food program for women, infants, and children (WIC).[2] The state inspectors determined as a basis for the suspension that the Market was guilty of eleven separate violations of the WIC regulations, including the alteration of program vouchers and acceptance of such vouchers in exchange for prohibited items.

The Market did not appeal this suspension, but it claims that the charges were unfounded. The plaintiff says that it was desirous of jettisoning the WIC program, and for that reason did not contest the state's accusations. Indeed, the record reflects that, during the appeal period from the state suspension, Della Valle sought voluntarily to relinquish his status as a WIC vendor.

RIDH's edict marked both the end of the plaintiff's WIC-related troubles with the state and the beginning of his federal difficulties. By letter dated May 2, 1985, the Food and Nutrition Service (FNS) of the United States Department of Agriculture notified the Market that its authorization to participate in the federal food stamp program, *see* 7 U.S.C. §§ 2011–2029, was being withdrawn in consequence of the state's WIC suspension. The Market pursued an administrative appeal, but to no avail; on July 9, 1985, the Secretary, acting through an administrative review officer, confirmed the Market's exile from the food stamp program. The period of disqualification (three years) was timed to coincide with the duration of the WIC debarment ordained by the state.

---

1. Della Valle originally named the Rhode Island Department of Health (RIDH) as a codefendant. The state agency's motion for summary judgment in its favor was granted, without opposition, on January 7, 1986. Thus, the United States is the sole remaining defendant.

2. WIC is a federal program designed primarily to furnish supplemental foodstuffs and nutri-

tion education to pregnant, postpartum, and breast-feeding women, and to infants and young children. 7 C.F.R. § 246.1 (1985). The administration and enforcement of the WIC program has been entrusted, in the main, to the states. 7 C.F.R. § 246.10(g). In Rhode Island, this responsibility has devolved upon RIDH.

The plaintiff seasonably prosecuted this action under 7 U.S.C. § 2023. This court stayed the operation of the FSPD Order pendente lite, *see Della Valle I* at 1304, on condition that the Market, during the currency of the stay, observe and abide by the rules of the food stamp program.

## II.

The plaintiff seeks judicial review of the three year FSPD Order pursuant to 7 U.S.C. § 2023(a). That statute provides, inter alia:

> Whenever ... a retail food store ... is disqualified ..., notice of such administrative action shall be issued to the retail food store, ... [which may thereupon claim its administrative appeal]. If the store ... feels aggrieved by such final determination, it may obtain judicial review thereof by filing a complaint against the United States in the United States court for the district in which it resides or is engaged in business, or in the case of a retail food store ..., in any court of record of the State having competent jurisdiction.... The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue....

The "trial de novo" which § 2023(a) contemplates signifies that, as to violation-related matters (including, presumably, programmatic eligibility), "the court should make an independent determination of the issues." *United States v. First City National Bank of Houston*, 386 U.S. 361, 368, 87 S.Ct. 1088, 1093, 18 L.Ed.2d 151 (1967). This signification has been judicially adopted for cases arising under § 2023(a). *E.g., Cross v. United States*, 512 F.2d 1212, 1216 n. 4 (4th Cir. 1975) (en banc); *Farmingdale Supermarket, Inc. v. United States*, 336 F.Supp. 534, 536 (D.N.J.1971). The district court, on this aspect of the case, is not confined to the contents of the administrative record. *Broad Street Food Market, Inc. v. United States*, 720 F.2d 217, 220 (1st Cir.1983).

The Secretary's selection of a sanction, however, stands on a different footing. *Id.* at 219–21. No new evidence is admissible in that regard. *Id.* at 221. The choice of a sanction is "peculiarly a matter for administrative competence." *Kulkin v. Bergland*, 626 F.2d 181, 184 (1st Cir.1980). But, it may nevertheless be set aside if it is, on the administrative record, unwarranted in law or unjustified in fact. *Broad Street Food Market*, 720 F.2d at 220.

The statutory scheme reflects that the power to disqualify prescinds from 7 U.S.C. § 2021(a), which intones in pertinent part as follows:

> Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program ..., on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter.

The Act empowers the Secretary "to issue such regulations consistent [with the statute] as the Secretary deems necessary or appropriate...." 7 U.S.C. § 2013(c). The Secretary has acted upon this authority and has engaged in extensive rulemaking. In this instance, the Secretary relied upon one of these regulations, viz., 7 C.F.R. § 278.1(k), to bottom the FSPD Order. That regulation declares:

> FNS shall withdraw the authorization of any firm authorized to participate in the program if it determines that the firm's continued participation will not further the purposes of the program or the firm fails to meet the specifications of paragraph (b), (c), (d), or (e) of this section,
> ....

From this base, the Secretary reasoned that the plaintiff, by virtue of the RIDH suspension, failed to meet the specifications of paragraph (b) of 7 C.F.R. § 278.1, in which it is stated that, when making an eligibility decision, the FNS shall consider: "... (3) the business integrity and reputation of the applicant." That being so, the Secretary insists that he had a duty, as

part and parcel of determining Della Valle's "business integrity and reputation," to consider "official records of removal from other Federal, State, or local programs," 7 C.F.R. § 278.1(b)(3)(ii), and that in this case, the state record of the Market's ouster as a WIC vendor was issue-determinative.

So, acting in this vein, the FNS declared Della Valle ineligible to participate in the food stamp program in the wake of, and as a result of, the state WIC suspension. As the Secretary concedes, however:

> [T]he suspension of the plaintiff was not based upon an FNS investigation, followed by a determination that certain violations has occurred, but rather, [the FSPD Order] was based *solely* on the fact that the plaintiff had been suspended from participation in the state administered Women, Infants, and Children (WIC) program by the Rhode Island Department of Health.

Government's Brief at 4 (emphasis original).

### III.

■ The Secretary may well be correct in his assessment that, given the benefit of 7 C.F.R. § 278.1(b)(3)(ii), he had no obligation independently to replicate RIDH's WIC investigation in order to consider the question of Della Valle's continued suitability to act as a food stamp program vendor. That position seems to be a sensible one, having in mind the tenor of the regulation and the practicalities of the administrative process. But this court, for reasons which will become apparent, *see* text *post*, need not express an opinion on the point. Assuming arguendo that the Secretary had no obligation federally to reinvent the state's wheel, it does not follow that the "only material fact [before this court] is whether or not a suspension by the State of Rhode Island occurred." Government's Brief at 4. The Secretary still had a duty to give reasoned consideration to the RIDH action and to its underpinnings; nothing in the Food Stamp Act or in the regulations thereunder suggest that removal of a vendor from a state or local program *automatically* triggers an FSPD Order.

In this case, the FNS failed to exercise the independent judgment which the statutory/regulatory mosaic demands. 7 C.F.R. § 278.1(k) does not purport to mandate disqualification whenever removal from another program occurs; it mandates such a finding of ineligibility only if FNS:

> determines that the firm's continued participation will not further the purposes of the program or the firm fails to meet the specifications of paragraph (b), (c), (d), or (e) of this section, . . . .

*Id.*

Here, FNS made no determination at all concerning whether the Market's "continued participation" would or would not "further the purposes of the program." As the government admits, *e.g.*, Brief at 5, the FNS did not exercise its discretion in any way; it treated the FSPD Order as being "compelled," *id.*, by the regulation. (The field director's May 2, 1985 notice of Della Valle's disablement reflects this approach with unmistakable clarity.) That was simply not the case. Nor is the government's bacon saved by reference back to the language of 7 C.F.R. § 278.1(b)(3). Once again, nothing therein *compels* a finding of ineligibility. An explication is required.

7 C.F.R. § 278.1(b) is the principal repository of the criteria for a retail vendor's program eligibility vel non. "In making this determination the FNS officer in charge shall consider" five categories of data. *Id.* These are:

1. The nature and extent of the purveyor's food business. *Id.* at § 278.1(b)(1).

2. The projected volume of coupon business to be anticipated. *Id.* at § 278.1(b)(2).

3. The business integrity and reputation of the purveyor. *Id.* at § 278.1(b)(3).

4. The need for, and availability of, bonding. *Id.* at § 278.1(b)(4).

5. "Any other factors which the FNS officer in charge considers pertinent . . .". *Id.* at § 278.1(b)(5).

No single one of these ingredients is accorded critical weight. To the contrary, the regulation calls upon the FNS to determine eligibility based upon a reasoned evaluation of all such information.

Within each fascicle of the regulation, the same type of balancing is required. 7 C.F.R. § 278.1(b)(3) does not direct that an applicant must necessarily be deemed bereft of business integrity solely because he has been drummed out of a state program. Rather, it directs the FNS to gauge the purveyor's "business integrity and reputation" (or the lack thereof) by "consider[ation]" of a melange of elements, such as criminal conviction records, judicial determinations in civil cases, evidence of prior fraudulent behavior, signs of attempted circumvention of earlier FSPD Orders, and the like. *Id.* "Official records of removal from other Federal, State, or local programs," *id.* at § 278.1(b)(3)(ii), are but a single entrant in this sweepstakes. And, the regulations do not presume to assign dispositive effect to any one of the various desiderata which the FNS officer in charge is directed to review.[3]

 It thus becomes all too evident that the Secretary's actions in Della Valle's case were trebly flawed. FNS never made any attempt independently to evaluate the plaintiff's "business integrity and reputation," but treated his ouster by RIDH from the WIC program as the functional equivalent of a failing grade on this criterion. Then, FNS compounded the error by treating that failing grade as tantamount to flunking the § 278.1(b) test, without performing the reasoned assessment of the five regulatory ingredients which § 278.- 1(b) requires. And, as a crowning indignity, FNS made no finding whatever as to whether "the firm's continued participation will [or will] not further the purposes of the program." 7 C.F.R. 278.1(k). Once the field director had erred in these important respects, the administrative process became a nullity.

## IV.

 To be sure, the Secretary's interpretation of the regulations is entitled to substantial deference. *E.g., Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980); *Citizens Savings Bank v. Bell,* 605 F.Supp. 1033, 1041 (D.R.I.1985). But, as this court observed earlier in this proceeding, "[t]he true measure of the deference due ... depends upon how persuasive the interpretation appears to be in light of all the attendant circumstances." *Della Valle I,* 619 F.Supp. at 1301. *See also Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *Citizens Savings Bank,* 605 F.Supp. at 1042. As the Court has cautioned, a reviewing tribunal cannot permit itself to "slip into a judicial inertia" or mechanistically to "rubberstamp" the agency. *Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). If an application of the regulations in a particular instance is "unwarranted in law," it cannot be countenanced. *Cf. Willy's Grocery v. United States,* 656 F.2d 24, 26 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1011, 71

---

**3.** The reasonableness of such individualized consideration is readily apparent. If a vendor was removed from a state program for, say, the failure timely to file a form, it would be difficult to justify his ensuing automatic disqualification from a federal program wherein he had complied meticulously with each and every paperwork requirement. It would similarly be as unjust automatically to disqualify Della Valle, or any other grocer, from the federal food stamp program because, to offer another example, his license to sell state lottery tickets was not renewed, (and he was thereby "removed" from this state "program") for such a reason as insufficient sales, *see* R.I.Gen.Laws § 42–61–

5(b)(f). Or, to take the matter one step further, it is bizarre to think that automatic disqualification should follow removal from a state scheme wholly unrelated to the grocery business, such as the artificial propagation of game animals program, R.I.Gen.Laws § 20–17–1 et seq., for a cause not reflecting dishonesty or the like. Hypothetically, if Della Valle failed to restrain his proverbial peacocks in the proper enclosure required under state law, *id.* at § 20–17–1, and thereby lost his permit to propagate and raise such birds, *id.,* he could, on the Secretary's reading of the regulatory mosaic, forfeit his right to participate in the federal food stamp program.

L.Ed.2d 301 (1982) (regulations anent choice of sanctions).

In the case at bar, the Secretary's myopic reading of his own regulations is totally unconvincing. He seized upon the acknowledged fact of the Market's removal from the WIC program, and went no further. But, under the Secretary's own rules, that shortcut was palpably erroneous. The Secretary's resultant final decision was a vagabond, drifting far afield from the regulations. Such an interpretation, as this case demonstrates, is "unwarranted in law." Such a peregrine edict, unanchored in the regulatory format, cannot be salvaged by an anfractuous post hoc deciphering of the rules.

The fact that the Secretary could doubtless have crafted a regulation providing for automatic debarment from the food stamp program in the event a vendor was removed from a kindred state activity for dishonest conduct is totally beside the point; the Secretary promulgated no such rule. Having made its regulatory bed, the FNS cannot casually sleep elsewhere.

The situation before the court parallels—but appears more egregious than—that considered in *Grand Islander Health Care Center, Inc., v. Heckler,* 573 F.Supp. 405 (D.R.I.1983). In *Grand Islander,* the Provider Reimbursement Review Board (Board) had affirmed the partial denial of reimbursement to a nursing home under the federal Medicare program, 42 U.S.C. § 1395 *et seq.* The provider claimed its appeal to the district court pursuant to 42 U.S.C. § 1395oo(f)(1). In one aspect of its review, the Board had refused to exercise its independent judgment, instead holding that an unrelated state audit of the same costs was conclusive on the issue. 573 F.Supp. at 414. The Board, in a manner reminiscent of the fashion in which FNS treated the RIDH suspension in this case, "never deigned in any way to examine the

reasonableness of [the state] audit or of its underlying methodology." *Id.* This court reversed and remanded, stating:

> [T]he Board's failure to evaluate the adequacy of the plaintiff's proffer, its silent declination to review the state of the evidence generally, and its perfunctory acceptance of the Rhode Island audit combine to represent an abuse of the Board's discretion.
>
> It is the Secretary who, under the Act, has the obligation of overseeing reimbursement for actual, reasonable costs. That obligation cuts two ways: it assures the government of a dollar's worth of value for a dollar spent; and it assures the prudent provider of reimbursement if and as reimbursement is due. There is scant warrant under either the Act or the regulations for the Secretary mindlessly to delegate this responsibility to a state agency, or to accept a pig in an unexamined state poke in lieu of fulfilling the incumbent fact-finding function. That sort of blind-man's buff does violence to settled notions of administrative decision-making....

*Grand Islander,* 573 F.Supp. at 414 (footnote and citation omitted).

Much the same is true of the case at bar. Instead of weighing the evidence as to the plaintiff's removal from the WIC program (including, for the sake of argument, the state's investigatory records, *see* text *ante* at 392) and formulating his own assessment as to extent to which such debarment, along with the other available data, adversely affected Della Valle's "business integrity and reputation," 7 C.F.R. § 278.1(b)(3), FNS's field director automatically assumed that the state disqualification destroyed the plaintiff's good name and irredeemably shredded his honesty.[4] Such a knee-jerk response was wholly impermissible. And, the infirmity was

---

4. The reflexive assumption made by the Secretary in this regard was even more dubious in that Della Valle was at the time a qualified food stamp retail vendor. That means, of course, that his integrity had previously passed the Secretary's muster. A blemish on the escutcheon of an unknown quantity may well be more damning than the same blot on the heraldry of one who has previously established his bona fides. Again, this highlights the need for FNS, under existing regulations, to examine each vendor's circumstances on a case-by-case basis.

then further infected by FNS's failure to make any attempt whatever to calibrate the overall balance which § 278.1(b) requires or to assess whether or not the WIC fiasco rendered the Market's continued engagement as a food stamp vendor counterproductive to the objectives of the Act.

 The Secretary's action is without support in the regulations and has no rational basis; to the contrary, it is entirely arbitrary. The FSPD Order imposed upon the Market in this impulsive fashion cannot be permitted to stand. While it is true that the basis for an administrative finding need not be expressed with fastidious clarity, *Kurzon v. United States*, 539 F.2d 788, 793 (1st Cir.1976), a finding must be made and an articulated basis must nonetheless exist. The government here has conceded that FNS made no independent evaluation of the situation in the first instance, regarding such an assessment to be unnecessary. "When an agency resorts to errant ostrichism, there is no balm which the court can, in conscience, apply to resuscitate the resultant finding." *Grand Islander*, 573 F.Supp. at 414 n. 14.

### V.

 This does not mean that Della Valle wins the point by default. The Act is tailored to insure judicial flexibility; it specifically provides that, in a proceeding of this genre, the court shall "enter such judgment or order as it determines is in accordance with the law and the evidence." 7 U.S.C. § 2023. The wide sweep of the language allows the court to shape a remedy to suit the matter at hand. Although it can be argued that this court, given its power to hold a "trial de novo," 7 U.S.C. § 2023(a), should simply find the facts which FNS overlooked and develop the necessary calculus, that asseveration completely ignores the value of the Secretary's

admitted expertise in matters anent the food stamp program. The interests of both justice and of uniformity in the application of the regulations will best be served by allowing the agency, once the miasma of its legal errors has been dispelled, to consider the matter afresh. *See Goodman v. United States*, 518 F.2d 505, 512 (5th Cir.1975) (court remanded to FNS for choice of a new sanction after judicial vacatur of an FSPD Order); *cf. Arlington Hospital v. Schweiker*, 547 F.Supp. 670, 679–80 (E.D. Va.1982) (court remanded for a determination of reimbursable physician billing costs after finding that the agency's accounting method was not based on the available cost information but instead, reflected a wholly arbitrary judgment).

### VI.

For the reasons stated, the agency's FSPD Order in this matter cannot be permitted to stand. The FNS too hastily plucked a supposed blossom when only the bud was ready.

The government's motion to affirm the Secretary's debarment of the Market must be, and it hereby is, denied. The July 9, 1985 order disqualifying Della Valle from acting as a retail food stamp vendor for a period of three years is hereby vacated. The case is remanded to the FNS to conduct a de novo administrative review of the Market's eligibility to continue its participation in the federal food stamp program, consonant with the legal principles set forth in this rescript.[5]

*It is so ordered.*

---

**5.** This court in no way minimizes the seriousness of RIDH's accusations against the Market. The court neither holds nor suggests that reliably documented charges of such a grave nature cannot serve as an adequate predicate for a long-term FSPD Order. The fault here is a methodologic one. The Secretary has promulgated an elaborate regulatory scheme for analyzing whether or not a purveyor should be eligible to participate in the program. Whatever wrongdoing Della Valle may or may not have committed or sanctioned, he is entitled to have FNS make a reasoned assessment of his situation in line with its own criteria.