Myrtha HERNANDEZ, d/b/a Tito's
Corner Store, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE FOOD AND CON-
SUMER SERVICE, Defendant.

No. 96–CV–6490L.

United States District Court,
W.D. New York.

April 16, 1997.

Myrtha Hernandez, Rochester, NY, pro se.

Brian M. McCarthy, Asst. U.S. Atty., Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff Myrtha Hernandez brings this action pursuant to 7 U.S.C. § 2023. She asks this Court to set aside a determination made by the United States Department of Agriculture, Food and Consumer Services (FCS), withdrawing her store's authorization to participate in the federal Food Stamp Program. For the reasons set forth below, plaintiff's request is denied. The determination of the FCS is upheld and plaintiff's authorization to participate in the federal Food Stamp Program is hereby terminated.

## BACKGROUND

This matter involves a store's loss of authorization to deal in the United States Department of Agriculture Food Stamp Program. Plaintiff owns a small market called "Tito's Comer Store," which has been a participant in the Food Stamp Program and allegedly relies heavily on customers who deal in food stamps. Plaintiff's husband, Hiram "Tito" Hernandez, worked in the store and identified himself as being a store manager.

By letter dated May 31, 1996, sent by certified mail, return receipt requested, the FCS notified plaintiff that "[her] authorization to participate in the Food Stamp Program ... [was] being withdrawn." The basis for the withdrawal was an investigation by the Rochester Police Department and the arrest of her husband, on charges of food stamp fraud, welfare fraud, and criminal usury. The letter stated that "[y]our fraudulent behavior demonstrates your firm's lack of the necessary business integrity and reputation to further the aims of the Food Stamp Program."

As was her right, plaintiff requested administrative review of this decision. By letter dated June 27, 1996, plaintiff appealed and asserted that the welfare and food stamp fraud charges against her husband had been dismissed, that neither she nor the "store" had ever been charged with any fraudulent behavior, and that her business integrity was impeccable.

By letter dated September 25, 1996 the initial administrative decision was sustained. The Reviewing Officer's letter stated in relevant part as follows:

Based on my review of the investigative file of the District Attorney's Office I believe that Hiram Hernandez ... did participate in a scheme to advance money to welfare recipients and to use their welfare cards to pay himself interest on the loans. Even if Mr. Hernandez is not the owner of Tito's Comer Store, he conducted an illegal business as a store employee, which calls into question the business integrity of your firm. It is my understanding that Mr. Hernandez has now been sentenced to three to nine years in jail.

The regulations governing the Food Stamp Program give the Department the authority to withdraw the authorization of retailers to participate in the program if there has been a criminal conviction or evidence of fraudulent behavior of officers, managers or employees of the firm. Therefor, it is my determination that the initial decision of the Regional Office to withdraw the

authorization of Tito's Comer Store to participate in the Food Stamp Program as a retailer is sustained.

The letter informed plaintiff that she was entitled to seek judicial review within thirty days.

Plaintiff, acting *pro se,* timely commenced this action in October 1996. The FCS voluntarily stayed enforcement of its determination for several weeks during which time plaintiff attempted to sell the store. After such attempts failed, the FCS notified plaintiff that its withdrawal of authorization would go into effect March 8, 1997. By Order of this Court, following oral argument on plaintiff's application for a stay, enforcement has been stayed pending my final ruling on this matter.

### THE LEGAL STANDARD

■ This Court has jurisdiction over this matter pursuant to 7 U.S.C. § 2023. That statute provides that a plaintiff is entitled to a *de novo* review of the FCS's actions, "in which the court shall determine the validity of the questioned administrative action." Thus, I must reexamine the agency's decision on a fresh record and make a determination based upon the preponderance of the evidence. *Ibrahim v. United States,* 834 F.2d 52, 53 (2d Cir.1987). It is plaintiffs burden to prove by a preponderance of the evidence that she is entitled to relief from the FCS's determination. However, in reviewing the **sanction** imposed, the standard of review is different: in that situation it is whether the FCS's determination was arbitrary and capricious. *See De La Nueces v. United States,* 1992 WL 58851, *2 (S.D.N.Y.1992); *Ibrahim v. United States,* 650 F.Supp. 163, 165 (N.D.N.Y.), *aff'd,* 834 F.2d 52 (2d Cir. 1987).

In this instance, both parties have submitted documentary evidence and legal memoranda in support of their positions. The essential facts are undisputed: only the law is contested.[1] Accordingly, I will resolve the matter on the papers submitted, on summary judgment. *See Freedman v. United States,*

926 F.2d 252, 261 (3d Cir.1991)("de novo review is compatible with a summary judgment disposition if there are no material facts in dispute"); *Haskell v. United States,* 743 F.Supp. 765, 767 (D.Kan.1990), *aff'd,* 930 F.2d 816 (10th Cir.1991), *cited in, De La Nueces, supra.*

### PLAINTIFF'S ARGUMENTS

#### A) *Innocent Owner*

■ Plaintiff asserts that she should not be penalized for the acts of her husband. While I am sympathetic to plaintiff, the law and regulations compel me to reject this "innocent owner" defense.

Pursuant to the Food Stamp Act, 7 U.S.C. § 2011, *et seq.,* stores may apply to the FCS for authorization to accept and redeem food stamp coupons. *See* 7 U.S.C. § 2018. One criterion for approval is "the business integrity and reputation of the applicant." 7 U.S.C. § 2018(a)(1)(C). In evaluating the business integrity and reputation of the applicant, the FCS officer may consider:

(i) Criminal conviction records reflecting on the honesty or integrity of officers or managers of the applicant firm;

\*     \*     \*     \*     \*     \*

(v) Evidence of prior fraudulent behavior of officers, managers or employees of the applicant firm; and

(vi) Any other evidence reflecting on the business integrity and reputation of the applicant. 7 CFR § 278.1(b)(3).

An applicant store must submit information which will permit a determination to be made as to whether the store qualifies or "continues to qualify" for approval. *See* 7 U.S.C. § 2018(c). Moreover, once approved, the FCS subsequently may "withdraw the authorization of any firm authorized to participate in the program [where] ... [t]he firm fails to meet [any of the relevant] specifications ..." 7 C.F.R. § 278.1(k)(1)(ii). Upon making a determination to withdraw authorization, the "FCS officer in charge shall issue a notice to the firm by certified mail or personal service

---

**1.** During oral argument on plaintiff's application for a stay, the parties indicated that neither sought an additional evidentiary hearing. I gave

the parties an opportunity to submit any additional materials on the matter.

to inform the firm of the determination and of the review procedure." 7 C.F.R. § 278.1(k)(2).

Thus, the law and regulations expressly contemplate that a store's authorization can be denied or withdrawn based upon criminal conviction records of officers or managers of the firm, or evidence of fraudulent behavior of officers, managers, or employees of the firm. It is not necessary that the criminal or fraudulent actions be those of the owner. It would be too easy to subvert the purpose of the regulations if they only applied to those denominated as "owners."

In this case, it is not disputed that Hiram "Tito" Hernandez was an employee of the store and one of its managers. Documents submitted by the United States show that in 1992, Mr. Hernandez identified himself as "manager" of the store with respect to the store's contract with Monetary Management Corporation, the entity through which FCS had arranged to provide the food stamp coupons. The store's name is "Tito's Comer Store." Plaintiff does not dispute that her husband was an employee or a manager. Thus, on these facts, withdrawal clearly is appropriate even though the "bad acts" were not performed by plaintiff herself.

Indeed, the innocent owner defense is applicable only in cases involving "disqualification" as opposed to a "withdrawal of authority." Disqualifications are slightly different from withdrawals of authority. Disqualifications are governed by a separate regulation—7 C.F.R. § 278.6—which provides for different periods of disqualification, including permanent disqualification, for a variety of infractions such as food stamp trafficking and selling unauthorized nonfood items. As amended in 1988, the disqualification regulation also provides for an alternative penalty—a civil money penalty—in lieu of permanent disqualification for trafficking violations where, inter alia, "[n]either firm ownership nor management were aware of, approved, benefitted from, or were in any way involved in the conduct or approval of trafficking violations." 7 C.F.R. § 278.6(i); *see also* 7 U.S.C. § 2021(b)(3)(B). Thus, the disqualifi-

cation regulation contemplates that, for trafficking violations, innocent owners may be entitled to a monetary penalty instead of being permanently disqualified in certain circumstances. *See Bakal Bros., Inc. v. United States,* 105 F.3d 1085 (6th Cir.1997); *TRM, Inc. v. United States,* 52 F.3d 941 (11th Cir.1995); *Holmes v. United States,* 868 F.Supp. 1348 (M.D.Ala.1994), *aff'd,* 67 F.3d 314 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1674, 134 L.Ed.2d 777 (1996).

By contrast, the regulation governing withdrawals of authority—7 C.F.R. § 278.1—is silent as to any alternative civil money penalty. Indeed, it contains no provision whatsoever concerning innocent owners. In the case before me plaintiff is not being disqualified—permanently or otherwise. Rather, her authorization to deal in food stamps is being withdrawn pursuant to 7 C.F.R. § 278.1. Thus, no innocent owner defense applies.[2]

Moreover, even if the withdrawal regulation included a comparable 'safe harbor' provision for innocent owners, plaintiff could not satisfy the required criteria. Because Tito Hernandez is plaintiff's husband, and because he was an active manager/employee, it cannot be said that "neither firm ownership nor management were aware of, approved, benefitted from, or were in any way involved in the conduct...." This is not a case where employees unrelated to the owner engaged in prohibited activities, for their own benefit. Obviously Tito was aware of his actions and because he is married to plaintiff it cannot reasonably be said that she and her store did not benefit in some way from his actions. Accordingly, I find that the FCS determination to withdraw plaintiff's authorization is appropriate even if the "innocent owner" analysis were applicable here.

### B) *Due Process*

Plaintiff also asserts that the FCS determination constitutes a denial of her due process rights. This defense has been addressed and rejected. Because an aggrieved plaintiff is entitled to seek a *de novo* review

---

**2.** Indeed, it is a misnomer to call it an innocent owner "defense" because, as contemplated by 7 C.F.R. § 278.6, it is not a defense to liability but instead provides for an alternative *penalty.*

of the FCS' determination, courts have found that the statute provides for sufficient process. *See Ibrahim v. United States,* 834 F.2d at 54 ("The trial de novo provision clearly afforded full procedural due process"); *Holmes v. United States,* 868 F.Supp. at 1353–56 (where the court rejected both plaintiff's procedural and substantive due process claims).

### C) *Independent Investigation*

Plaintiff also asserts that the FCS erred because it made its determination based solely upon the investigation and arrest made by the Rochester Police Department, and failed to do any independent investigation. Plaintiff cites no legal precedent for such a position. The Court has found only one case where an FCS determination was vacated because the FCS failed to conduct an independent investigation. *See Della Valle v. United States,* 626 F.Supp. 388 (D.R.I.1986). In *Della Valle,* the FCS withdrew a firm's authorization based upon the fact that the state of Rhode Island had terminated the firm's authority to participate in the Special Supplemental Nutrition Program, for Women, Infants & Children (WIC) program. There the court found that the FCS had to make some independent evaluation of the reasons for its determination especially since the WIC termination could have been the result of a mere bookkeeping (or some other minor) error.

In fact, the WIC termination was not the result of a minor bookkeeping error. It was the result of fraudulent acts specifically prohibited by the WIC regulations. Moreover, the *Della Valle* court did not discuss 7 C.F.R. § 278.1(n) which expressly states that "FCS shall withdraw the Food Stamp Program authorization of any firm which is disqualified from the WIC Program based in whole or in part on any act which constitutes a violation of that program's regulation and which is shown to constitute a misdemeanor or felony violation of law ..." 7 C.F.R. § 278.1(n)(1). For these reasons, I do not find the *Della Valle* decision compelling.

■ Moreover, this situation is different. The FCS determination ultimately was not based merely upon a police investigation.

Rather, the Reviewing Officer's decision to sustain the initial determination was based upon a criminal **conviction**—a conclusion reached by a jury of Hernandez' peers and based upon a full presentation of evidence by both the prosecution as well as the defense. This is different from relying solely on the judgment of a state agency. I find it to be a sufficient basis for the FCS' withdrawal of authority, particularly in light of the language of 7 C.F.R. §§ 278.1(b)(3)(i), (v) and (vi) which provide that "criminal convictions", "fraudulent behavior" and "any other evidence" may serve as factors for determining a firm's integrity and reputation.

■ Plaintiff also asserts that her husband's conviction is being appealed and that the FCS determination should not be implemented until after the appeal is resolved. I reject this argument. The regulations do not require the FCS to suspend its determinations until such time as all criminal appeals are exhausted. To do so would delay the administrative action for months or years, effectively stalling any efforts by the FCS to regulate its programs. Plaintiff is free to reapply for authorization and if Tito Hernandez' conviction is vacated or meaningfully modified on appeal, her position could be thus improved.

### D) *The FCS Violated Its Own Regulations*

■ Plaintiff asserts that the FCS determination was arrived at in violation of its own regulations. Although she did not identify it specifically, plaintiff is correct that the FCS made one procedural error. In its first letter to the plaintiff, dated May 31, 1996, the FCS cited to an incorrect regulation. The May 31st letter stated that "[t]his action is taken under the authority of Section 278.6(a) of the regulations governing Food Stamp Program...." As discussed above, Section 278.6 is the regulation that governs disqualifications, not withdrawals of authority. However, virtually all other references in every other piece of correspondence concerning this matter refers to a "withdrawal of authority." The September 25th Reviewing Officer's letter sustaining the original determination refers to plaintiff's husband's con-

viction and its impact on the integrity of the firm,—matters relevant to a withdrawal under Section 278.1 of the regulations. No other document refers to "disqualification."

During oral argument on plaintiff's application for a stay, I questioned the United States' attorney about this inconsistency. He indicated that the original cite was an error but emphasized to the Court that all other documents correctly refer to the action as a withdrawal of authority. Plaintiff did not indicate that she suffered any prejudice from the distinction.

Accordingly, I find that the government's error in this case was inconsequential. All actions taken would have been the same whether the determination was a disqualification or a withdrawal of authority, and it appears that the plaintiff suffered no adverse consequences as the result of the typographical error.

Thus, while the government made one small error, I find the error to be inconsequential. In all other respects the regulations were followed correctly: plaintiff received notice by certified mail of the withdrawal, the reasons therefore, and instructions on how to appeal the decision. Plaintiff has correctly proceeded to challenge the determination. Thus, I find that the FCS's actions were substantially in conformance with its regulations. *See* 7 C.F.R. § 278.1(k).

### E) *Sanction*

Finally, plaintiff asserts that the sanction is too harsh. As noted above the standard of review for determining whether the sanction is appropriate is whether the FCS's determination was arbitrary and capricious. *See De La Nueces v. United States*, 1992 WL 58851 at *2; *Ibrahim v. United States*, 650 F.Supp. at 165. To be arbitrary or capricious, the agency's action must have been 'unwarranted in law or without justification in fact.' Under this standard, when the agency's action ad-

heres to the guidelines, it may not be overturned as arbitrary or capricious. *See De La Nueces*, 1992 WL 58851 at * 2; *see also Young Jin Choi v. United States*, 944 F.Supp. 323 (S.D.N.Y.1996).

Here, the regulations governing withdrawals of authority (7 C.F.R. § 278.1(k)) are silent as to duration. Unlike disqualifications, which must be for specified time periods, Courts have interpreted withdrawals of authority to be indefinite in duration. *See Rorex v. United States*, 661 F.Supp. 406 (E.D.Ark.1987); *Bush v. United States*, 473 F.Supp. 715, 720 (E.D.Pa.1979). Because the FCS determination does not specify a period of withdrawal, I interpret the withdrawal to be indefinite and in accordance with the law and regulations. Thus, it is not arbitrary or capricious and must be sustained.[3]

### *CONCLUSION*

Plaintiff has failed to prove by a preponderance of the evidence that she is entitled to relief from the FCS determination. For all the above reasons, the FCS determination is sustained; plaintiff's authority to accept and redeem food stamps is hereby withdrawn. The stay previously entered by this Court is hereby vacated.

Plaintiff's motion to amend the complaint is denied.

IT IS SO ORDERED.

---

**3.** By motion filed March 4, 1997, plaintiff sought leave to amend her complaint to assert facts unknown at the time of her original complaint (docket # 11). I have reviewed the proposed amended complaint and find that it does not change the outcome in this case because the facts alleged therein were adequately alleged by plaintiff in her application for a stay and other documents considered by this Court in making its final determination on the merits. Thus, because her proposed amendment would be futile, plaintiff's motion for leave to amend must be denied.